**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: MUNICIPAL PARKING
SERVICES, INC.,

DPPA LITIGATION

_____/

Case No.: 3:24-cv-320-TKW-HTC

CLASS ACTION

**DEFENDANT MUNICIPAL PARKING SERVICES, INC'S ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CONSOLIDATED
AMENDED COMPLAINT AND COUNTERCLAIMS AGAINST
PLAINTIFF/COUNTER-DEFENDANT AUDREY SMILEY**

Defendant Municipal Parking Services, Inc. ("MPS"), pursuant to Fed. R. Civ.

P. 8(a)–(b) hereby files its answer and affirmative defenses to the Consolidated

Amended Complaint [ECF No. 23] filed by Plaintiffs on September 27, 2024, and

asserts its Counterclaim against Plaintiff/Counter-Defendant Audrey Smiley for

breach of contract, breach of third-party beneficiary contract, unjust enrichment, and

quantum meruit.

**ANSWER**

Defendant MPS denies each and every allegation contained in the

Consolidated Amended Complaint that is not expressly admitted below, and

responds to the individually numbered paragraphs of the Consolidated Amended

Complaint as follows:

138864677.2

1.      Admitted that Plaintiffs attempt to set forth a putative class action for violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ("DPPA"), but denied that Plaintiffs have done so or should be able to certify or maintain a class.

2.      Admitted that MPS provides camera and automated technology for the management of private parking lots as one aspect of its business and did so at the parking lots in question in this case. Also, admitted that MPS used license plate recognition ("LPR") camera technology at the parking lot at issue and that cameras captured the license plates of the vehicles in question in this action. Otherwise, denied.

3.      Admitted that each of the named Plaintiffs received a parking violation notice following their failure to pay for parking, which included charges as stated on the invoices themselves.  Otherwise, denied.

4.      Admitted to the extent Paragraph 4 quotes the parking violation notices but denied to the extent Paragraph 4 mischaracterizes or misstates those terms. Further denied that MPS does not engage in towing and booting as MPS has provided ample evidence of those enforcement efforts to Plaintiffs.   Otherwise, denied.

5.      Denied.  MPS initiated a counterclaim against Plaintiff Smiley in this action.

2

6.     Admitted that MPS's system automates parking lots by capturing the license plate information of vehicles that enter and exit the lot, along with how long the vehicles stay in the lot and whether the driver of the vehicle paid for parking. Otherwise, denied.

7.     Admitted.

8.     Admitted that MPS contracts with third-party, independent contractor vendors to provide various services . Otherwise, denied.

9.     Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Admitted that Plaintiff Nelson received a parking violation notice consisting of parking fees, fines, and late fees totaling $115.  Otherwise, denied.

16.    Denied.

17.    Denied.

18.    Denied.

138864677.2

19. Admitted that the DPPA prohibits persons from knowingly obtaining or using personal information. Denied that MPS is in violation of the DPPA or that Plaintiffs are entitled to any relief under the DPPA.

20. Denied.

21. Denied.

22. Denied.

23. Admitted that Plaintiffs attempt to bring a putative class action, but denied that a class action can be certified or maintained.

## PARTIES

24. Admitted.

25. Admitted.

26. Admitted.

27. Denied.

28. There are no allegations of fact in this paragraph, therefore denied.

## JURISDICTION & VENUE

29. Denied because the Class Action Fairness Act of 2005 does not apply as a Class action cannot be certified or maintained and because the jurisdictional amount was not satisfied while the action was in state court. But, admitted post-removal because this Court has jurisdiction pursuant to the removal effected on federal question grounds.

138864677.2

30.     Admitted.

31.     Admitted, for venue purposes only. Otherwise, denied.

## FACTUAL ALLEGATIONS

### A. *History and Background of the DPPA*

32.     There are no allegations of fact in this paragraph, therefore denied.

33.     There are no allegations of fact in this paragraph, therefore denied.

34.     There are no allegations of fact in this paragraph, therefore denied.

35.     There are no allegations of fact in this paragraph, therefore denied.

36.     There are no allegations of fact in this paragraph, therefore denied.

37.     There are no allegations of fact in this paragraph, therefore denied.

38.     There are no allegations of fact in this paragraph, therefore denied.

39.     There are no allegations of fact in this paragraph, therefore denied.

40.     Denied.

41.     Denied.

42.     There are no allegations of fact in this paragraph, therefore denied.

### B. *Defendant Obtained, Used and Disclosed Personal Information in Violation of the DPPA*

43.     Admitted that MPS provides parking lot technology for parking enforcement. Otherwise, denied.

5

44.    Admitted that Paragraph No. 44 quotes MPS's website. Otherwise, denied.

45.    Denied.

46.    Admitted that MPS uses LPR technology and software. Otherwise, denied.

47.    Denied.

48.    Denied.

49.    Admitted that MPS's website said as such at one point, but denied that MPS performs lookups.

50.    Admitted MPS removed the language from the website because it was not accurate.

51.    Admitted to the extent consistent with the parking violation notice, otherwise denied.

52.    Admitted.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Admitted.

138864677.2

59.     Admitted that for the private lots that Plaintiffs parked in as alleged in this action, MPS was not acting on behalf of a federal, state or local agency. Otherwise, denied.

60.     Admitted.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Admitted.

66.     Admitted.

67.     Denied.

68.     Admitted.

69.     Admitted.

70.     Admitted.

71.     Denied.

72.     Admitted.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

138864677.2

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

## PLAINTIFFS' EXPERIENCES

### *Plaintiff Audrey Smiley*

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Admitted that Plaintiff Smiley disputed the tickets with MPS.

Otherwise, denied.

90.     Admitted that Plaintiff Smiley owes the sums invoiced.  Otherwise,

denied.

91.     Denied.

92.     Denied.

8

93.    Denied.

94.    Denied.

95.    Denied.

**Plaintiff Peggy Nelson**

96.    Denied.

97.    Admitted that Plaintiff used the lot at the stated address behind the UPS store.  Otherwise, denied.

98.    Denied.

99.    Denied.

100.   Admitted to the extent consistent with the parking violation notice. Otherwise, denied.

101.   Admitted to the extent consistent with the parking violation notice. Otherwise, denied.

102.   Admitted to the extent consistent with the parking violation notice. Otherwise, denied.

103.   Admitted that Nelson called MPS regarding the parking notice. Otherwise, denied.

104.   Admitted.

105.   Admitted that Plaintiff Nelson sent a check to MPS on December 13, 2022. Otherwise, denied.

138864677.2

106. Denied.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

*Plaintiff Christopher Williams*

111. Denied.

112. Admitted.

113. Denied.

114. Denied.

115. Denied.

116. Admitted that Plaintiff Williams received a "Parking Invoice."

Otherwise, denied.

117. Denied.

118. Denied.

119. Denied.

120. Admitted that Plaintiff Williams appealed the Parking Invoice.

Otherwise, denied.

121. Admitted that MPS voided Plaintiff Williams' Parking Invoice.

Otherwise, denied.

138864677.2

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

## CLASS ACTION ALLEGATIONS

127.    Admitted that Plaintiffs attempt to bring a putative class action and that should a class be certified MPS and its employees would be excluded, but denied that a class can be certified or maintained.

128.    Denied that Plaintiffs has a "right" to amend the class definition, but admitted that the Court has discretion to modify class definitions and grant Plaintiff leave to amend class definitions.

129.    Denied.

130.    Denied.

131.    Denied, including all subparts.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

11

137.   Denied.

## COUNT I
### Violations of the Driver's Protection Privacy Act
### 18 U.S.C. § 2721, *et seq.*

138.   The responses to Plaintiffs' allegations in paragraphs 1–137 are reincorporated as if set forth fully here.

139.   There are no allegations of fact in this paragraph, therefore denied.

140.   Denied.

141.   Denied.

142.   Denied.

143.   Denied.

144.   Denied.

145.   Denied.

146.   Denied.

147.   Denied.

148.   Denied.

## PRAYER FOR RELIEF

MPS denies that Plaintiffs are entitled to any of the relief requested in the Prayer for Relief section of the Complaint, including all subparts, or any other relief that may be requested elsewhere in the Complaint.

138864677.2

## DEFENSES[1]

## <u>FACTS COMMON TO ALL DEFENSES</u>

MPS is in the business of, among other things, providing camera management solutions for lot management companies in specific locations in Florida, Alabama, and other select states within the United States. MPS provides automated license plate recognition ("LPR") technology and parking lot management products that parking lot managers and owners use in furtherance of their lot management. Lot managers and owners implementing MPS's camera technology conspicuously post that parking enforcement is managed using automated LPR technology and that use of the lot will be administered through a bill-by-plate system in which the owner of the vehicle is charged for the parking owed and related fines through the information linked to their license plate.

The particular lots involved in this action had conspicuous signs informing anyone electing to park at the lots that, should they fail to pay for their parking using the methods available at the lot, they would be billed for their parking using information associated with their license plate and by parking, then not paying for

---

[1] MPS does not undertake any burden of proof as to any of the defenses below where it would otherwise not have such a burden simply by listing the defense here. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens*, P.A., 525 F.3d 1107 (11th Cir. 2008).

13

the parking, they were agreeing to this manner of billing.  Moreover, signs posted at lots direct individuals to the website for Premium Parking, which has express terms of purchase alerting individuals that their license plate information will be used by Premium or a third-party enforcement vendor to ticket, immobilize, or boot a vehicle.  Individuals are able to access the terms of purchase even without downloading the Premium Parking application.  These same terms are available when individuals download the Premium Parking application to their mobile devices.  MPS, through its contract with Premium Parking, serves as the agent for enforcement, including booting, towing, and ticketing vehicles that park and do not pay in Premium Parking lots.  A portion of fines collection as part of the enforcement efforts are remitted to MPS for its equipment and services.

Critically, when individuals, such as these Plaintiffs, park at a lot, then fail to pay and leave, MPS camera systems provide license plate and other vehicle images to a third-party, GovCIO.  GovCIO uses still other third-party commercial vendors to match the license plate images to the vehicle owner and the vehicle owner's address.  GovCIO then directs that the information matching the license plate is provided to another vendor for purposes of printing and mailing the notice of the parking violation with the amount of the parking fee owed.  GovCIO is responsible for the process of matching license plate information to owners and ensuring that parking violation notices are printed and mailed after MPS's camera system provides

14

the license plate information to GovCIO.   The vehicle owner receives the invoice with only their name and address showing, the same manner in which they receive other forms of mail.  The owner is then presented with payment options, or the ability to dispute the charge if their vehicle was not the one that actually used the parking lot on the date and time referenced in the invoice.  The information is also used to cross-check vehicle owners for purposes of towing or booting vehicles whose owners have failed to pay prior invoices after parking in the space; in the interests of public safety and for law enforcement purposes; and in cross-checking the vehicle owner information against the payment received to satisfy the invoice for the parking.  If the vehicle owner elects to pay the invoice for the violation, the notice provides instructions on how to remit payment to MPS.  Against this set of common facts, MPS raises the following affirmative defenses:

## FIRST DEFENSE[2]

Plaintiff has failed to state a claim because there are no facts, as opposed to bald conclusions, that MPS actually knowingly uses or distributes any of the information that Plaintiff claims to be protected under the DPPA.  Moreover, Plaintiff has failed to allege facts, as opposed to bald conclusions, that any of the

---

[2]    MPS recognizes that the Court previously addressed the first, second, third, fourth and fifteenth defenses raised by MPS in its Amended Answer to the Complaint (ECF No. 14) through its ruling on the motion to dismiss (ECF No. 42). MPS simply raises the defenses now in the event that there are new facts for the Court to consider and for purposes of preserving these defenses for appellate review later in these proceedings.

138864677.2

uses alleged within the Complaint are outside of the enumerated permissible uses listed in the DDPA.

## SECOND DEFENSE

Laws in various states expressly permit the use of automated license plate technology and the use of driver personal information for private parking. The particular lots at issue in this case, through the conspicuous signage (and directions to access terms of purchase on the web or through a mobile application), alert vehicle owners such as Plaintiff that parking is enforced using bill-by-plate automated camera technology that will utilize driver data for purposes of performing the management functions at the lot, including billing for parking and towing.

Although the Court ruled against this defense in its Order on the Motion to Dismiss, that ruling was explicitly in the context of Florida Law. ECF No. 42 at 21. To the extent that members of the putative class live in states with laws similar to Washington's, discussed below, that permit the use of driver personal information for private parking, MPS reasserts this defense. *See, e.g.*, Wash. Rev. Code. § 46.12.630(2)(e) ("The department of licensing may furnish lists of registered and legal owners of motor vehicles or vessels, only to the entities and only for the purposes specified in this section, to … [a] government agency, commercial parking company, or its agents requiring the names and addresses of registered owners to notify them of outstanding parking violations.").

16

138864677.2

## THIRD DEFENSE

It is a permissible use of personal information under the DPPA for a legitimate business or its agents, employees, or contractors to use personal information to verify the accuracy of personal information submitted by the individual to the business and if such information is not correct or is no longer correct, to obtain correct information, but only for purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security against the individual.  Plaintiffs Smiley and Nelson admittedly used parking at MPS-managed lots on multiple occasions.  Plaintiffs' conduct triggered a permissible use of the information attached to the license plate of the vehicle in use to verify the accuracy of the license plate information linked to the vehicle for purposes of either pursuing legal remedies against Plaintiff or recovering on the debt (*i.e.*, the parking fee owed) by Plaintiffs for the parking.

## FOURTH DEFENSE

It is a permissible use of personal information under the DPPA to use information in connection with any investigation in anticipation of litigation or the service of process.  The mailing of the invoice for the unpaid parking is the equivalent of a demand letter from for failure to pay for the service consumed.  Moreover, MPS originally sued Plaintiff Smiley in a counterclaim (ECF No. 14) filed in this action on August 14, 2024, demonstrating that its collection of

information concerning Plaintiff Smiley is used in the furtherance of litigation.  Due to Plaintiffs' prosecution of these actions, MPS has implemented a program of escalating parking violation notice to litigation.

**<u>FIFTH DEFENSE</u>**

It is a permissible use of personal information under the DPPA to use information in connection with providing notice to owners of towed or impounded vehicles, which is also a reason that vehicle information attached to the license plate was pulled.

MPS uses the license plate data it collects to run the driver's information against information showing outstanding parking invoices.  Drivers with outstanding invoices are subject to immediate towing and booting while their vehicles are located within lots using MPS technology.   Thus, each lookup is incidental to the efforts to tow and boot in response to violations and thereafter notify and inform drivers of this enforcement activity.

**<u>SIXTH DEFENSE</u>**

To the extent that Plaintiff Smiley is entitled to any award, the sum should be set off by the amount of the unpaid parking fees she owes for using a private parking lot without paying the fee to do so.

18

## SEVENTH DEFENSE

Plaintiff Smiley alleges that she parked at the lot in question on multiple occasions. She did not pay. Her theft of parking triggered the issuance of multiple violations for her parking, which she did not pay. Plaintiff Smiley cannot claim statutory damages for each violation by willingly doing the act that she claims to have been a problem – *i.e.*, stealing parking – after she received invoices putting her on notice that she was in fact being billed-by-plate as the sign at the parking lot told her was going to happen.

## EIGHTH DEFENSE

Plaintiffs have waived any right to claim a statutory violation because they proceeded to park at the paid parking lots in question despite signs conspicuously telling them that the parking was for a charge and the charge would be billed using their license plates.

## NINTH DEFENSE

Plaintiffs have consented to the use of their personal information by proceeding to park at the paid parking lots in question despite signs conspicuously telling them that parking was for a charge and the charge would be billed using their license plates. Moreover, those signs directed Plaintiffs to the website for Premium Parking and the terms-of-purchase set forth there and through the mobile application

138864677.2

that constitute express consent to the use of Plaintiffs' names and addresses for the exact purposes used here.

**TENTH DEFENSE**

Plaintiffs' claims are barred by the doctrine of unclean hands. Plaintiffs consumed parking that was not free by parking in paid lots and left without paying for the privilege. Plaintiffs' claims in this matter arise out of and spring from their theft of parking such that they do not come to this Court with clean hands and cannot be heard to complain that they should be compensated for receiving violation notices relating to their own inequitable theft of the parking.

**ELEVENTH DEFENSE**

Plaintiffs' putative class claims cannot be maintained because the laws of the various states in which parking lot owners and operators have parking lots using MPS's automated LPR technology have differing laws governing private parking and the rules for enforcement of same.

**TWELFTH DEFENSE**

Plaintiff's putative class claims cannot be maintained because individualized issues prevail concerning whether others within the putative class receiving notices of violation saw and understood signage establishing that parking enforcement would be undertake through automated license plate technology as here. Similarly, the putative class claims cannot be maintained because of the individualized nature

20

of whether others within the putative class had their data pulled relating to other permissible uses, including but not limited to towing services or law enforcement activities, debt collection, municipal government enforcement, or to confirm or in compliance with terms of service agreed to using mobile applications, among other legitimate individualized reasons why information would be obtained. Additionally, the putative class claims cannot be maintained because of the individualized nature of the management of each separate private parking lot, including variations within each lot owner's or management company's policies and procedures regarding the among of signage and language of signage addressing parking enforcement through automated license plate technology.

## THIRTEENTH DEFENSE

Plaintiff's putative class action claims cannot be maintained because Plaintiff has alleged no facts, as opposed to bald conclusions, that would demonstrate the elements of a class claim to justify continued inclusion of those aspects of her pleading.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations or laches to the extent a jurisdiction provides for a period shorter than the four years alleged in the Complaint.

138864677.2

**FIFTHTEENTH DEFENSE**

At the time the Court evaluated MPS's motion to dismiss, MPS had not had the opportunity to depose Plaintiffs on the allegations in their pleading.  MPS has now had the opportunity to examine Plaintiffs on their claims and the record establishes that the Plaintiffs parked and failed to pay for parking.  To the extent any of the Plaintiffs paid money that was owed for parking, the Court has already determined that such payment would not constitute concreate injury for standing purposes.  But to the extent any of these Plaintiffs parked and failed to pay for parking, if the debt was owed, it would not have been a waste of time for standing purposes to review and respond to the parking violation notice, even if that resulted in a successful appeal of the amount owed or a reduction in that amount.  The existence of the debt by the failure to pay created neither a concrete injury for paying the amount owed or taking the time to negotiate a resolution of the debt.

**SIXTEENTH DEFENSE**

Although Plaintiffs have made repeated representations that the claims framed by the operative complaint pertain only to private parking, and private parking lots are the only lots in which Plaintiffs actually parked, MPS asserts that it is a permissible use to act as an agent of any government authority in the event there is any questions about the scope of any of MPS's parking enforcement activities in lots owned or maintained by any government agency.

22

WHEREFORE, having answered and asserted defenses Defendant Municipal Parking Services, Inc. requests that the Court enter judgment in its favor, together with an award to Defendant Municipal Parking Services, Inc. of its reasonable attorneys' fees and costs (pursuant to all contractual or statutory grounds, including but not limited to those provided in the DPPA itself), and all further appropriate equitable and supplemental relief and that Plaintiffs take nothing from this action.

## COUNTERCLAIM AGAINST PLAINTIFF AUDREY SMILEY

Counter-Plaintiff MPS, by and through its undersigned counsel, sues Counter-Defendant Audrey Smiley based upon the following allegations:

### Nature of the Action, Parties, Jurisdiction, Venue

1.     This is an action for breach of contract, unjust enrichment, and quantum meruit arising from Counter-Defendant Audrey Smiley's unpaid parking fees.

2.     Counter-Plaintiff MPS is a Minnesota corporation with its principal place of business in Minnesota.

3.     Counter-Defendant Audrey Smiley is a citizen and resident of Okaloosa County, Florida.  Complaint, ECF No. 23, ¶ 24.

4.     On June 5, 2024, Counter-Defendant Smiley filed a Complaint in the Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, alleging breach of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 – 2725.

ECF No. 1-1.  Counter-Plaintiff MPS timely removed the action to this Court on July 12, 2024.  ECF No. 1.

5.      The Court has subject matter jurisdiction over this Counterclaim, and venue is proper in this Court pursuant to Federal Rule of Civil Procedure 12(a), in that this Counterclaim arises out of the same transaction that is the subject matter of the Complaint.  This Counterclaim is a compulsory counterclaim within the meaning of Federal Rule of Civil Procedure 12(a).  A logical relationship exists between the claims asserted in the Complaint and the Counterclaim asserted by MPS because the same operative facts serve the basis of the claims in both the Complaint and the Counterclaim.

6.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1367, as it relates to the claims in the Complaint, over which this Court has original subject matter jurisdiction.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, and by virtue of the commencement of the action in the Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, which is within the Pensacola Division of the Northern District of Florida.

## General Allegations

8.      Counter-Plaintiff MPS is in the business of, among other things, providing technology (including camera systems) to managers and owners of private

138864677.2

parking lots at specific locations in Florida as well as other select states within the United States.

9.     Counter-Plaintiff MPS provides cameras that use an automated license plate recognition ("LPR") technology to capture and provide vehicle information to lot managers and owners.

10.     Locations that utilize Counter-Plaintiff MPS' cameras and technology conspicuously post that the lot is managed using automated LPR technology, and that use of the lot will be enforced through a bill-by-plate system in which the owner of the vehicle is charged for the parking fee and/or fines owed through the information linked to their license plate if they fail to pay at the lot.

11.     The particular lot involved in this counterclaim, lot P2381, managed by Premium Parking, had conspicuous signs informing anyone who elected to park at the lot that their failure to pay for parking would trigger enforcement (whether by towing, a boot, or fine) by cameras using data associated with vehicle license plates and related driver data. Those signs are reproduced below.

138864677.2



138864677.2



138864677.2



12.     Counter-Plaintiff MPS provides the license plate camera information captured by the cameras to a third-party independent contractor, GovCIO, LLC ("GovCIO").   GovCIO then uses still other third-party contractors to match the captured license plate images to the corresponding vehicle owner and address.

28

138864677.2

13.    The information is then used to determine whether vehicles should be booted, towed, or fined for the failure to pay for parking.

14.    For vehicles receiving a fine, the information is provided to another third-party contractor to print and mail the parking fee invoice to the corresponding vehicle owner.  The vehicle owner receives the invoice, which shows only their name and address, in the same manner in which they would receive other forms of mail. The vehicle owner is then presented with payment options, or the ability to dispute the charge if their vehicle was not involved in the parking transaction at the date and time referenced in the invoice.

15.    The information is also used to cross-reference the identities of vehicle owners for purposes of towing vehicles whose owners have failed to pay prior invoices after parking in the private parking lot and or cross-referencing the vehicle owner information against the payment received to satisfy the parking fee invoice; and for law enforcement purposes.

16.    Counter-Plaintiff MPS, through its contract with Premium Parking, serves as the agent for enforcement, including booting, towing, and ticketing vehicles that park and do not pay in Premium Parking lots.  Violation fines are paid to Counter-Plaintiff MPS for this service and MPS is entitled to retain a portion of these fees for its services.

138864677.2

17.     Counter-Defendant Smiley parked her vehicle at lot P2831 on multiple occasions.  The lot was managed by Premium Parking (a non-party) and was photo-enforced using Counter-Plaintiff MPS's camera technology to capture vehicle and license plate information.

18.     By parking her vehicle in lot P2381, Counter-Defendant Smiley agreed and was obligated to pay the parking fees.

19.     Due to her failure to pay the parking fees, non-parties mailed invoices to Counter-Defendant Smiley, indicating she owed the fine for parking and for not paying the parking fee.  The invoices directed Counter-Defendant Smiley to make payment to Counter-Plaintiff MPS.

20.     Counter-Defendant Smiley responded to these violation notices by indicating she had a parking pass to park in lot P2381 through her employment at a business in the area.  MPS determined her parking pass was for another lot, not P2381, and agreed to adjust some of the violations as a courtesy to Counter-Defendant Smiley. To date, Counter-Defendant Smiley has failed to pay the outstanding fines (those adjusted or unadjusted or even the actual for her unpaid parking fees to Counter-Plaintiff MPS.

## **Count I – Breach of Contract**

21.     Counter-Plaintiff MPS repeats the allegations in paragraphs 1-20 of the Counterclaim as if fully set forth herein.

138864677.2

22.    Counter-Defendant Smiley entered into agreements with Counter-Plaintiff MPS when Counter-Defendant Smiley parked her vehicle on multiple occasions in the private parking lot requiring payment for parking beginning in January of 2024.

23.    Counter-Defendant Smiley breached her agreement to pay for parking in exchange for the ability to do so by failing to pay the required fees for parking in the private parking lot.

24.    As a result of Counter-Defendant Smiley's breaches in failing to pay the required fees, which MPS is entitled to collect, Counter-Plaintiff MPS has incurred damages.

**WHEREFORE,** Counter-Plaintiff Municipal Parking Services, Inc. demands judgment against Counter-Defendant Audrey Smiley for the total amount of parking fees, as well as pre-judgment interest, post-judgment interest, costs, and such other relief that this Court deems just and proper.

## Count II - Breach of third-party beneficiary contract (in the alternative)

25.    Counter-Plaintiff MPS repeats the allegations of paragraph 1-20 of the Counterclaim as if set forth fully herein.

26.    Counter-Plaintiff MPS is a third-party beneficiary of the relationship between Plaintiff and Premium as a result of Counter-Defendant Smiley's parking in the lot managed by Premium and a failure to pay for that parking.

31

27.     Counter-Plaintiff MPS has a contractual right to pursue enforcement of each parking violation due to a failure to pay through booting, towing, or the issuance of a violation.

28.     Signage at the lot in question, P2381 conspicuously informs individuals, such as Counter-Defendant Smiley, that the failure to pay for parking will result in enforcement action.

29.     Moreover, the terms of service on Premium's website provide the same notice to those parking in Premium lots.  The website for those terms is provided to individuals parking in Premium lots through the signage and the mobile application that allows individuals to use Premium lots and pay for parking.

30.     Counter-Plaintiff MPS collects the violation fees when individuals fail to pay for parking, as Counter-Defendant Smiley did here and is entitled to retain a portion of the fee for its enforcement services.

**WHEREFORE,** Counter-Plaintiff Municipal Parking Services, Inc. demands judgment against Counter-Defendant Audrey Smiley for the total amount of parking fees, as well as pre-judgment interest, post-judgment interest, costs, and such other relief that this Court deems just and proper.

### **Count III – Unjust Enrichment (in the alternative)**

31.      Counter-Plaintiff MPS repeats the allegations of paragraphs 1 - 20 of the Counterclaim as if fully set forth herein.

32

32.    Counter-Plaintiff MPS conferred a benefit on Counter-Defendant Smiley by allowing her to park her vehicle in the private parking lot.

33.    Counter-Defendant Smiley has knowledge of the benefit conferred upon her by parking her vehicle in the private parking lot.

34.    Counter-Defendant Smiley voluntarily accepted and retained the benefit conferred by Counter-Plaintiff MPS.

35.    When Counter-Defendant Smiley failed to pay for parking, Counter-Plaintiff MPS was entitled to collect the required fees for parking in the private parking lot.

36.    Counter-Defendant Smiley has been unjustly enriched in the amount equal to the outstanding fees due to her failure to pay the violation fee.

37.    It would be inequitable for Counter-Defendant Smiley to retain the benefit without paying the fair value of the outstanding fees to Counter-Plaintiff MPS.

**WHEREFORE,** Counter-Plaintiff Municipal Parking Services, Inc. demands judgment against Counter-Defendant Audrey Smiley for the total amount of parking fees, as well as pre-judgment interest, post-judgment interest, costs, and such other relief that this Court deems just and proper.

138864677.2

## Count IV – Quantum Meruit (in the alternative)

38.     Counterclaim-Plaintiff MPS repeats the allegations of paragraphs 1 - 20 of the Counterclaim as if fully set forth herein.

39.     Counter-Plaintiff MPS conferred a benefit on Counter-Defendant Smiley by allowing her to park her vehicle in the private parking lot.

40.     Counter-Defendant Smiley has knowledge of the benefit conferred upon her by parking her vehicle in the private parking lot.

41.     Counter-Defendant Smiley voluntarily accepted and retained the benefit conferred by Counter-Plaintiff MPS.

42.     When Counter-Defendant Smiley failed to pay for parking, Counter-Plaintiff MPS was entitled to collect the required fees for parking in the private parking lot.

43.     Counter-Defendant Smiley has been unjustly enriched in the amount equal to the outstanding fees due to her failure to pay the violation fee.

44.     It would be inequitable for Counter-Defendant Smiley to retain the benefit of parking without paying the fair value of the outstanding fees to Counter-Plaintiff MPS.

**WHEREFORE**, Counter-Plaintiff Municipal Parking Services, Inc. demands judgment against Counter-Defendant Smiley for the total amount of parking fees, as

138864677.2

well as pre-judgment interest, post-judgment interest, costs, and such other relief that

this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Defendant/Counter-Plaintiff MPS demands trial by all issues triable as of right

by jury.

Respectfully submitted,

 s/Kevin P. McCoy
Kevin P. McCoy
Florida Bar No. 0036225
D. Matthew Allen
Florida Bar No. 866326
kmccoy@carltonfields.com
mallen@carltonfields.com
CARLTON FIELDS, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

Brooke Patterson
Florida Bar No. 1002538
bpatterson@carltonfields.com
CARLTON FIELDS, P.A.

700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendant/Counter-Plaintiff Municipal Parking Services, Inc.*

138864677.2